IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ELIZABETH ANDERSON as Personal Representative of the Estate of ALTON DURAN | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CV 2:09-CV-112 (TJW) |
| (1) THE GOOD SHEPHERD HOSPITAL, INC. d/b/a GOOD SHEPHERD MEDICAL CENTER, (2) JOSE ANGEL ROCHA (3) MANZIEL LAW OFFICES, and (4) FARMERS INSURANCE CO., | § § § § § § § § | |
| *Defendants* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Manziel Law Offices' ("Manziel") Motion to Dismiss Under Rules 12(b)(2), 12(b)(5), 12(b)(1), and 12(b)(6) (Dkt. No. 45). Having reviewed the motions and applicable law, the Court is of the opinion that the motion should be GRANTED-in-part and DENIED-in-part. The Court QUASHES Plaintiff's attempt at service on Manziel and ORDERS that Plaintiff re-serve Manziel in accordance with Federal Rule of Evidence 4(e) or Texas Rule of Evidence 106 within 10 days from the date of this order. The Court DENIES Manziel's motion to dismiss on all other grounds. Manziel has 10 days to answer after being properly re-served. The Court sets this case for trial on the Court's August 2011 docket. The Pretrial Hearing will be held on July 28, 2011 at 2:30 p.m. Jury selection is set on Monday, August 1, 2011. The parties are ordered to meet and confer and submit a new docket control and discovery order within 10 days after Manziel answers.

## I. Factual Background

This is a suit for violations of the federal Fair Debt Collection Practices Act ("FDCPA") in which Elizabeth Anderson ("Plaintiff"), as Executrix of the Estate of Alton Duran ("Duran"), alleges that Manziel misrepresented the character and extent of the debt owed by Duran to Good Shepherd Medical Center ("Good Shepherd") and used false, misleading, and deceptive representations in connection with its collection efforts. Specifically, Plaintiff alleges that Manziel sought to collect an amount that exceeded the recovery to which Good Shepherd was entitled under governing law, that federal law prohibits the hospital from collecting any amount in excess of Duran's liability settlement less procurement costs, and that Texas law prohibits the hospital from recovering any amount since it never submitted Duran's claims to his health insurance carrier. Plaintiff also alleges that Good Shepherd's "trauma activation fee" is not properly included in its lien amount.

Duran received care at Good Shepherd in February and March of 2008 for injuries he sustained in a car accident. At the time of his treatment, Duran was insured for medical care by a group insurance policy and by Medicare. Plaintiff alleges that rather than seeking payment from the Duran's group health insurance policy or from Medicare, Good Shepherd billed Duran directly for roughly $140,000.00 in medical bills, including a $7,500.00 trauma activation fee. To secure its interests, Good Shepherd filed a statutory hospital lien against any potential recovery that Duran might obtain from the driver of the other car involved in the accident resulting in Duran's injuries. Plaintiff alleges that the maximum amount of liability insurance available to satisfy Duran's claims against the other driver was $50,000.00. Plaintiff alleges that in August of 2008, Duran advised Manziel that the total available liability insurance in the case was $50,000.00 and that the procurement costs would be not less than $20,000.00.

On June 20, 2008, Good Shepherd sent Duran an invoice and final notice for total charges of slightly more than $140,000.00. The final notice demanded payment in full of the total invoice amount within fifteen days and stated that "[u]nless payment is received within 15 days your account will be turned to a collection agency for further action." After the invoice was not paid, Good Shepherd turned Duran's account over to Manziel for collection. The basis for Plaintiff's FDCPA claim is a fax sent by Manziel to Duran's attorney on April 12, 2010, demanding payment of $97,231.14 in satisfaction of Good Shepherd's lien against any settlement amount. Plaintiff claims that this fax violated the FDCPA because it demanded payment of amounts not owed under federal law. Specifically, the fax demanded payment of more than the total available liability insurance in the case less procurements costs, in violation of Medicare regulations. Alternatively, plaintiff argues that Texas law bars the hospital from recovery altogether because it did not timely submit Duran's account to the health insurance carrier, and, thus, Duran's attempts to collect a debt barred by state law violate the FDCPA. Plaintiff also alleges that the fax violated the FDCPA because it failed to disclose that Manziel is a federally-regulated debt collector and that all communications were for the purpose of collecting the debt.

## II. Improper Joinder

Manziel first argues that Plaintiff improperly and untimely joined Manziel after the deadline for joining new parties and without seeking leave of court. Plaintiff filed its Amended Complaint adding Manziel as a party on May 5, 2010. On May 7, 2010, the Court held a scheduling conference during which the parties, excluding Manziel who had not yet been served, discussed the proposed deadlines for the docket control and discovery orders. That same day, based on the parties' agreement at the scheduling conference, the Court entered the Docket Control Order (Dkt. No. 28). The deadline for joinder of new parties under the Docket Control

3

Order was set retroactively at April 30, 2010. Plaintiff never moved to extend that deadline or for leave of court to add Manziel as a party after that deadline. However, it should be noted that at the time Plaintiff filed its Amended Answer adding Manziel, the Docket Control Order had not yet been entered and, thus, there was no deadline for joinder of parties. Manziel argues that Plaintiff acted in bad faith and with an improper motive when it added Manziel to the suit. For example, Manziel argues that Plaintiff only added the federal FDCPA claims against Manziel to the lawsuit in order to avoid dismissal for lack of federal question jurisdiction pursuant to Defendant Good Sheppard Medical Centers' pending motion to dismiss. Because Good Sheppard Medical Center has been dismissed from the case, its motion to dismiss for lack of federal question jurisdiction is moot. In fact, the only claims remaining in the case are the FDCPA claims pending against Manziel, and the Court will consider only those claims in deciding Manziel's motion to dismiss.

Under these unusual circumstances, the Court finds that Manziel has suffered no prejudice by being added to the case less than a week after the deadline for joinder of parties. In addition, the Court recently vacated the trial date and schedule in this case. (*See* Dkt. No. 64.) Because the parties will be able to renegotiate the schedule after the Court sets a new trial date, Manziel cannot argue that it has been prejudiced in any way. Accordingly, the Court DENIES Manziel's motion to dismiss on the grounds that joinder of Manziel was untimely and made in bad faith.

### III. Improper Service

Manziel next moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) and argues that it was not properly served with process under either Federal Rule of Civil Procedure 4(e)(2) or Texas Rule of Civil Procedure 106(a). On June 9, 2010, the process server personally

served Connie Murphy, the office manager for Manziel, with a copy of the summons and complaint at Manziel's office. However, Manziel argues that it is a sole proprietorship, and that Connie Murphy was not authorized to accept service on its behalf. Under Texas law, "a sole proprietorship has a legal existence only in the identity of the sole proprietor." *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 952 (Tex. 1983); *see also CA Partners v. Spears*, 274 S.W.3d 51, 62 n.6 (Tex.App.—Houston [14th Dist.] 2008, pet. denied) ("Texas law regards the sole proprietor and the sole proprietorship as one and the same person."); *CU Lloyd's of Texas v. Hatfield*, 126 S.W.3d 679, 684 (Tex.App.—Houston [14th Dist.] 2004, pet. denied) ("Under Texas law, a sole proprietorship has no separate legal existence apart from the sole proprietor."). Accordingly, the Court will look to Federal Rule of Civil Procedure 4(e) regarding service of an individual to determine whether Manziel was properly served. The primary issue is whether service on Manziel's office manager constitutes service on Manziel under Federal Rule of Civil Procedure 4(e) or Texas Rule of Civil Procedure 106.

Because Manziel Law Offices is a sole proprietorship, service must be made on its sole proprietor, Lisa Manziel, in accordance with Federal Rule of Evidence 4(e) in order to be proper. Federal Rule of Civil Procedure 4(e)(1) states that service may be made following Texas law. Under Texas Rule of Civil Procedure 106(a), service may be made by either (1) delivering a copy of the complaint and summons to the defendant in person or (2) mailing the complaint and summons to the individual via certified or registered mail. In the alternative, Federal Rule of Civil Procedure 4(e)(2) states that service may be made on an individual by either: (a) delivering a copy of the summons and complaint to the individual personally; (b) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) delivering a copy of each to an agent authorized by appointment or by

5

law to receive service of process. Service was not made on Lisa Manziel personally under Texas Rule of Civil Procedure 106(a)(1) or Federal Rule of Civil Procedure 4(e)(2)(a), nor was the summons and complaint delivered to Lisa Manziel's dwelling or usual place of abode in accordance with Rule 4(e)(2)(b). Finally, the summons and complaint was not sent to Lisa Manziel by the process server via certified or registered mail as authorized under Texas Rule of Civil Procedure 106(a)(2). Instead, the summons and complaint were left with Connie Murphy, Manziel's office manager, at Manziel's office. Manziel maintains that Ms. Murphy was not an authorized agent for service of Manziel, and Plaintiff has not contested this statement. Accordingly, leaving a copy of the summons and complaint with Ms. Murphy does not constitute proper service under Federal Rule of Civil Procedure 4(e)(2)(c). Accordingly, Manziel was not properly served in accordance with Federal Rule of Civil Procedure 4(e) or Texas Rule of Civil Procedure 106(a).

The Court, therefore, QUASHES Plaintiff's attempt at service on Manziel and ORDERS that Plaintiff re-serve Manziel in accordance with Federal Rule of Evidence 4(e) or Texas Rule of Evidence 106 within 10 days from the date of this order. *See Brown v. Mississippi Cooperative Extension Service*, 89 Fed. Appx. 437, 439 (5th Cir. 2004) (recognizing district court's discretion to either dismiss a case for improper service of process or quash service and grant plaintiff time in which to properly serve defendant); *George v. U.S. Dept. of Labor, Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986) ("The district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process . . .").

## IV. Failure to State a Claim under FRCP 12(b)(6)

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

The Supreme Court has recently pronounced two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more

7

than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Manziel makes several arguments regarding why dismissal under Rule 12(b)(6) for failure to state a claim is appropriate, and the Court will consider each in turn.

### A. Standing

First, Manziel argues that Plaintiff lacks standing to bring the FDCPA claim against Manziel because the FDCPA does not apply to efforts to collect from deceased persons for the reason that a deceased person cannot be damaged. Thus, according to Manziel, an executrix of an estate, such as Plaintiff, does not have standing to sue under the FDCPA. Plaintiff, however, asserts that civil liability arises under the FDCPA as to "any debt collector who fails to comply with any provision of this subchapter with respect to any person." 15 U.S.C. § 1692k. Citing the Sixth Circuit's holding in *Wright v. Finance Service of Norwalk, Inc.*, Plaintiff goes on to argue that the phrase "with respect to any person" includes more than just the addressee of the offending letters and includes, at a minimum, those who "stand in the shoes" of the debtor or have the same authority as the debtor to open and read his letters. 22 F.3d 647, 650 (6th Cir. 1994) (en banc). Thus, Plaintiff argues that because both she and counsel for the estate "stand in the shoes" of Duran and have the authority to open and read Duran's letters, they have standing to sue Manziel under the FDCPA.

The Court agrees with Plaintiff and denies Manziel's motion to dismiss on the grounds of standing. The Sixth Circuit in *Wright* directly addressed Manziel's argument and stated:

> Given the broad language of the FDCPA, the purpose of the statute, and Congress's intent to make the statute self-enforcing, we find that, at least in this case, the phrase "with respect to any person" includes more than just the addressee of the offending letters. We conclude that the phrase, at a minimum, includes those persons, such as Wright, who "stand in the shoes" of the debtor or

8

> have the same authority as the debtor to open and read the letters of the debtor. Otherwise, a debt collector's liability would depend upon fortuities such as an alleged debtor's death. Such a result is inconsistent with the broad scope of the FDCPA, and we decline to so limit the act.
>
> Accordingly, we affirm the district court's holding that Wright, as the executrix of the estate, has standing to sue Finance Service under the FDCPA.

*Wright*, 22 F.3d at 650. *See also Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing *Wright* for its position that Congress wrote broad language into the FDCPA to forestall abusive practices by debt collectors). The Court agrees with this analysis of the FDCPA and holds that Anderson, as the executrix of Duran's estate, has standing to sue Manziel under the FDCPA.

### B. Limitations

Second, Manziel contends that any FDCPA suit against Manziel is barred as a matter of law by the FDCPA's one year statute of limitations. *See* 15 U.S.C. 1692k(d) (providing for a one year statute of limitations for FDCPA claims). Plaintiff's FDCPA claim is based on a fax sent by Manziel to Duran's counsel on April 12, 2010, after Duran's death, demanding payment of an amount that Plaintiff alleges exceeds the sum owned under federal and state law. The amended complaint adding Manziel as a party to this lawsuit was filed on May 5, 2010, 23 days after the fax was sent by Manziel. Manziel, however, asserts that no communications after Duran's death can be the basis of an FDCPA claim. Accordingly, Manziel asserts that the April 12, 2010 fax, or any other communications from Manziel after Duran's death, cannot be the basis of an FDCPA claim against it. Because Duran had been dead for more than a year before Manziel was added to the lawsuit, Manziel claims that the one year statute of limitations has necessarily run on any communications sent by Manziel to Duran before his death, which, according to Manziel, are the only arguably actionable communications under the FDCPA. As

discussed above, however, the Court holds that Anderson, as the executrix of Duran's estate, has standing to sue Manziel under the FDCPA. Therefore, the April 12, 2010 fax may potentially provide the basis for a FDCPA claim, and since the amended complaint was filed 23 days later, Manziel's statute of limitations defense is without merit.

### C. Communication with the Debtor

Third, Manziel argues that there can be no claim under the FDCPA where, as here, the debt collector sent a demand to an attorney instead of communicating directly with the debtor. (Mot. to Dismiss, Dkt. No. 45, at 30.) Thus, the April 12, 2010 fax sent from Manziel to Duran's attorney cannot be the basis for a FDCPA claim. Plaintiff, however, notes that the FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Plaintiff also cites the Seventh Circuit's holding in *Evory v. RJM Acquisitions Funding, LLC*, for the proposition that a debtor's attorney is both "any person" and "any medium" under the FDCPA. 505 F.3d 769, 773 (7th Cir. 2007). Accordingly, Plaintiff argues that any communication to Duran's attorney, including the April 12, 2010 fax that forms the basis for Plaintiff's FDCPA claim, must comply with the FDCPA just as if it were directed personally to Duran.

The Court holds that communications with a debtor's attorney may form the basis of a FDCPA violation. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007) ("Thus, plainly, the FDCPA covers communications to a debtor's attorney."); *Evory*, 505 F.3d at 773 (holding that communication to a debtor's attorney may provide the basis of the FDCPA violation because the lawyer is both "any person" and "any medium"); *Quesenberry v. Alliant Law Group, PC*, 4:09-cv-414, 2010 WL 1189457, at *2 (E.D. Tex. Mar. 5, 2010) (Mazzant, J.) (noting that the Fifth Circuit has not addressed the issue but finding that "a false representation to

10

a debtor's attorney can indeed violate the [FDCPA]"). Therefore, Manziel's motion to dismiss on this ground is denied.

### D. The FDCPA Suit as a "Proxy"

Fourth, Manziel asserts that the FDCPA claim should be dismissed because it is a mere "proxy to litigate a legal argument." (Mot. to Dismiss, Dkt. No. 45, at 17.) According to Manziel, the case amounts to nothing more than an effort by Plaintiff to have the Court determine whether federal law requires the deduction of procurement costs from a lien settlement. Relying on the Eight Circuit's decision in *Richmond v. Higgins*, Manziel argues that the FDCPA is not the appropriate vehicle to dispute the merits of a debt. *See* 435 F.3d 825, 827 (8th Cir. 2006). Manziel maintains that the Plaintiff's claim would allow any legal dispute or defense of payment to be transformed into a FDCPA claim such that if any debt collector loses, the debate constitutes an automatic violation of the FDCPA. Plaintiff, however, argues that she seeks only to enforce the FDCPA's prohibition on false and misleading communications including those that misrepresent the amount of the debt or threaten to take action that is prohibited by law. According to Plaintiff, these prohibitions necessarily incorporate substantive federal and state law regarding what is and is not a legitimate debt. In this case, Plaintiff alleges that federal law prohibits the hospital from collecting any amount in excess of Duran's liability settlement less procurement costs. Alternatively, Plaintiff argues that Texas law bars the hospital from recovery altogether because it did not timely submit Duran's account to the health insurance carrier. Thus, Plaintiff alleges that Manziel committed a false and misleading act under the FDCPA by demanding payment of an amount in excess of that allowed by law.

The Court holds that Plaintiff states a claim under the FDCPA sufficiently to survive a Rule 12(b)(6) motion to dismiss, and therefore, Plaintiff is not merely using the FDCPA as a

proxy to litigate a legal argument. A debt collector violates 15 U.S.C. § 1692e when the debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes any "false representation of the character, amount, or legal status of any debt." *Id.* at § 1692e(2). The complaint states that Manziel misrepresented the amount of debt to be $97,231.14 when Manziel knew the total available liability insurance was $50,000.00 and that his procurement costs would be not less than $20,000.00. (*See* 1st Am. Compl. ¶¶ 39-43.) According to Plaintiff, the amount Good Shepherd in this case could have charged Plaintiff is "up to the amount of the proceeds of the liability insurance less applicable procurement costs." Medicare Secondary Payer Manual § 40.2 (2009). Under this interpretation, Manziel may have misrepresented the debt owed to be $97,231.14 when the actual amount owed would have been approximately $30,000.00. This interpretation of the law comes from the Centers for Medicare & Medicaid Services (CMS), and the Court observes that an agency's construction of its own regulations is entitled to substantial deference. *Lyng v. Payne*, 476 U.S. 926, 939 (1986). Unfortunately, however, given that there has been no discovery in this case, the Court does not have the necessary facts to determine whether this interpretation by CMS will be controlling in this case. This dispute is thus more appropriate for summary judgment. Therefore, at this time, Plaintiff's First Amended Complaint pleads facts to support a plausible claim for relief under the FDCPA provisions discussed above. Furthermore, Plaintiff provides another basis for the FDCPA claim—that Manziel failed to disclose in all written communications that Manziel is a federally-regulated debt collector and that all communications were for the purpose of collecting the debt. (*See* 1st Am. Compl. ¶ 43.) Manziel has not disputed this basis, and Plaintiff's FDCPA claim can survive a Rule 12(b)(6) motion on this ground.

### E. Debt Not in Default When Acquired

Finally, Manziel argues that the FDCPA does not apply to this case because the debt in question was not in default when acquired by her office. Therefore, Manziel states that it cannot be a "debt collector" under the FDCPA because the debt was not in default. Plaintiff argues that a debt is in default under the FDCPA when the consumer has failed to timely pay the money owed. Accordingly, Plaintiff contends that the debt was clearly in default when transferred to Manziel because Good Shepherd had sent a "final notice" to Duran which was not paid within the time proscribed. Specifically, Good Shepherd invoiced Duran for the total charges of roughly $140,000.00 on June 20, 2008 and demanded payment in full within fifteen days. Plaintiff contends that, on its face, the invoice demanded full payment and purported to represent Good Shepherd's "Final Notice" to Duran. The invoice also stated that the account would be transferred to a collection agency if payment was not received within 15 days. Once the deadline to pay the invoice passed, Good Shepherd transferred the account to Manziel. Accordingly, Plaintiff argues that the debt was clearly in default when acquired by Manziel and that the prohibitions of the FDCPA apply in this case.

The Court agrees with Plaintiff that the debt was in default when acquired by Manziel. Neither the FDCPA nor the Fifth Circuit has clearly defined what it means to be "in default." The Second Circuit, however, found that a debt was "in default" in an analogous situation. *Alibrandi v. Financial Outsourcing Servs., Inc.*, 333 F.3d 82, 88 (2nd Cir. 2003). In that case, an important consideration in determining that the debt was "in default" was that the creditor hired another entity to collect on the debt. *See id.* ("If First Union hired North Shore to pursue Alibrandi's debt, North Shore's self-identification as a debt collector constituted a declaration by First Union that Alibrandi's debt was in default."). As Plaintiff stated, Good Shepherd's June

20, 2008 Letter to Plaintiff stated "FINAL NOTICE. Unless payment is received within 15 days your account will be turned to a collection agency for further action." (Dkt. No. 53, Ex. A.) Then, as Good Shepherd indicated, shortly after the 15 days expired, Good Shepherd told Plaintiff's counsel that "[f]urther negotiations need to be directed to Manziel." (Dkt. No. 53, Ex. B.) Likewise, on July 22, 2008, Manziel sent Plaintiff's counsel a fax letting counsel know that "[t]his firm represents the interest of Good Shepherd Medical Center with regard to unpaid charges . . . ." (Dkt. No. 53, Ex. C.) The Court holds that Good Shepherd and Manziel's actions constituted a declaration that Plaintiff's debt was in default. Therefore, Manziel's motion to dismiss on the grounds that the debt was not in default is denied.

V. **Conclusion**

For the reasons discussed above, Manziel's Motion to Dismiss (Dkt. No. 45) is hereby GRANTED-in-part and DENIED-in-part. The Court ORDERS that Plaintiff's service of Manziel is QUASHED and that Plaintiff is given 10 days from the date of this order to properly serve Manziel in accordance with Federal Rule of Civil Procedure 4(e) or Texas Rule of Civil Procedure 106. Manziel has 10 days to answer after being properly re-served. Manziel's Motion to Dismiss (Dkt. No. 45) is DENIED in all other respects. The Court sets this case for trial on the Court's August 2011 docket. The Pretrial Hearing is set for **July 28, 2011, at 2:30 p.m. in the United States District Court, 100 E. Houston Street, Marshall, Texas.** Jury selection is set for **Monday, August 1, 2011**, **in the United States District Court, 100 E. Houston Street, Marshall, Texas**. The parties are ordered to meet and confer and submit a new docket control and discovery order within 10 days after Manziel answers.

It is SO ORDERED.

SIGNED this 7th day of March, 2011.

14

*T. John Ward*

T. JOHN WARD
UNITED STATES DISTRICT JUDGE